**Manuel LUGO, Petitioner,**

v.

**Robert H. KUHLMANN, Superintendent, Respondent.**

**No. 98 Civ. 8662 (RPP).**

United States District Court, S.D. New York.

Oct. 7, 1999.

Manuel Lugo, Fallsburg, NY, pro se.

Robert T. Johnson, District Attorney, Bronx County, Karen Swiger, Assistant District Attorney, Bronx County, Bronx, NY, for Respondent.

## ORDER ACCEPTING MAGISTRATE'S REPORT AND RECOMMENDATION

ROBERT P. PATTERSON, Jr., District Judge.

This Court has received and reviewed the Report and Recommendation (the "Report") issued by Magistrate Judge Andrew J. Peck on July 29, 1999. On August 6, 1999, Karen Swiger, Assistant District Attorney, submitted an Objection to Magistrate's Report and Recommendation ("Respondent's Objection") on behalf of respondent objecting to portions of the Report. On September 20, 1999, petitioner filed his Reply and Objections to the Magistrate Judge's Proposed Report and Recommendation ("Petitioner's Objections"). Respondent's first objection to the Report is based on the contention that the one-year limitation period under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)(1), runs from the date of the denial by the New York Court of Appeals of petitioner's application for leave to appeal. The law in this Circuit is that the state conviction becomes final once the time to seek direct review in the United States Supreme Court by writ of certiorari has expired. *Ross v. Artuz,* 150 F.3d 97, 98 (2d Cir. 1998). As to respondent's other objections that (1) the court's reasonable doubt charge is a matter of state law not cognizable on federal habeas corpus review; (2) the Magistrate Judge did not apply the standards of the AEDPA, 28 U.S.C. § 2254(d), in reviewing the court's reasonable doubt charge; (3) the Magistrate Judge improperly considered petitioner's claims regarding the prosecutor's summation as federal constitutional claims because such claims were only raised as state law claims, were not included in the petition for habeas corpus and did not apply the standards contained in the AEDPA, 28 U.S.C. § 2254(d); and (4) the Magistrate Judge did not apply the standards of the AEDPA, 28 U.S.C. § 2254(d), in evaluation of petitioner's claim of ineffective assistance of counsel (Respondent's Objections), it is not necessary to rule on these objections since the Report reached conclusions on those subjects favorable to the respondent, although not based on rationale proposed by the respondent.

The objections filed by petitioner raise one point not directly decided by the Report, *i.e.,* that petitioner's appellate counsel did not properly raise on appeal that, in response to a jury note, "the Court in a condensed and mixed fashion reiterated to the jury the elements of Murder by depraved indifference as it [sic] pertain to Marilyn Colon." (Petitioner's Objections at 22–24.) In fact, appellate counsel did argue that this supplementary charge was grounds for reversal in Point I of her brief on appeal to the Appellate Division. (Affidavit in Opposition of Karen Swiger dated April 1999, Ex. 1 at 15–18.) That appellate counsel raised the issue of the corrections of the supplementary charge is reflected in the decision of the Appellate Division, 232 A.D.2d 236, 648 N.Y.S.2d 539, and petitioner acknowledges that in a follow-up letter to Judge Titone of the New

York Court of Appeals, appellate counsel "reiterated the words of her appellate brief." (Petitioner's Objections at 5.) Thus, petitioner's claim of a failure to raise this point is not well grounded and does not constitute ineffective assistance of appellate counsel.

Petitioner's remaining objections have also been reviewed and found to have been properly responded to in the Report.

Accordingly, after consideration of the Report and the objections filed thereto, it is hereby:

ORDERED that the Report and Recommendation issued by Magistrate Judge Andrew J. Peck on July 29, 1999 is accepted in accordance with 28 U.S.C. § 636(b). Accordingly, it is further

ORDERED that in accordance with the Report the Petition of Manuel Lugo is dismissed. As the petition presents no question of substance for appellate review, a certificate of appealability will not be issued under 28 U.S.C. § 2253. Pursuant to 28 U.S.C. § 1915(a)(3), it is hereby certified that no appeal from this order would be taken in good faith.

SO ORDERED.

## REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge.

**To the Honorable Robert P. Patterson, United States District Judge:**

Petitioner Manuel Lugo seeks a writ of habeas corpus from his 1994 conviction of two counts of second degree murder, for which he was sentenced to consecutive terms totaling 45 years to life. Lugo's petition raises five claims: (a) there was insufficient evidence to support his conviction for Colon's murder (Pet.¶ 12(A)), (b) the trial court's reasonable doubt jury instruction deprived him of a fair trial (Pet. ¶ 12(B)), (c) comments by the prosecutor in summation were prejudicial (Pet.¶ 12(C)),

(d) evidence of Colon's pregnancy was erroneously admitted into evidence (Pet. ¶ 12(C)), and (e) ineffective assistance of appellate counsel (Pet.¶ 12(D)).[1] Lugo's insufficiency of the evidence claim was raised on direct appeal to the First Department but was not adequately raised in his application for leave to appeal to the New York Court of Appeals. Thus, that ground is unexhausted and procedurally defaulted in state court, and federal habeas corpus review of that claim accordingly is barred. Lugo's claim as to Colon's pregnancy was not raised in federal constitutional terms before the First Department and thus is unexhausted but procedurally barred for habeas review. Lugo's remaining claims lack merit. Accordingly, for the reasons set forth below, the Court should deny Lugo's petition.

### FACTS

#### Evidence at Trial

In the early morning of December 30, 1990, Wilfredo Roman, under orders from Manuel Lugo, shot and killed Carlos Ventura and Ventura's girlfriend, Marilyn Colon. The court tried Lugo and Roman together, but using two separate juries. (See 3/29/94 Pretrial Tr. at 2–16; see also, e.g., Trial Transcript ["Tr."] 1359–61, 1365–69.) Lugo's street name or nickname was "Supra," and Roman's street name was "Faze." (Tr. at 1480, 1486, 1489, 2066, 2407–08.)

At around 10:30 p.m. on December 29, 1990, Ventura and Colon parked Ventura's automobile on Vyse Avenue between 180th and 181st Streets in the Bronx. (Tr. 1496–98, 1500–01, 2417.) Colon was Ventura's girlfriend or wife. (Tr. 1474–75, 2401, 2417.) While Colon remained in the car, Ventura talked to Angel Otero, Ruben Cruz, and other drug dealers about their drug business. (Tr. 1501–02, 2417–18.) Cruz informed Ventura, a drug dealer in

---

[1] Lugo's petition raises four grounds; however, his third ground contains two claims.

(Pet.¶ 12(A)–(D).)

the area (Tr. 1473–74, 2400), that Lugo was selling crack (in "blue tops" vials) in Ventura's territory. (Tr. 1501, 1682, 1684, 1688, 2405, 2418–19, 2489.) A half hour later, Lugo drove by, Cruz stopped him, and Lugo and Ventura had a lengthy argument about their drug sales territories. (Tr. 1503–05, 1688, 1693–97, 1705, 2420–22, 2424, 2440.) Following the argument, Ventura returned to his parked automobile and sat with Colon. (Tr. 2424.)

Lugo then went to the corner of 181st Street and Vyse Avenue. Wilfredo Roman came over, and Lugo told Roman to retrieve a gun from his apartment. (Tr. 1520–21A, 1524–25, 1536–37, 1706–07, 1745, 2424–26.) About fifteen minutes later, at around 1:00 a.m., Roman returned with something "bulky" underneath his jacket, and Lugo told him: "go do what you have to do, go do your job. But be careful of his wife because she's pregnant." (Tr. 1524, 1526–28, 1537–38, 1540, 1549, 1710–11, 1714–16, 1747–48, 1764–65, 2429–31, 2435.)

Roman walked down the block, stopped behind Ventura's car, and opened fire towards Ventura. (Tr. 1528, 1540–43, 1545, 1717–18, 1748, 2431.) Roman fired six or seven shots from an Uzi through the car's rear window, killing Ventura. (Tr. 1543–45, 2432.) Roman "was going to leave, but since he heard [Colon] screaming" he moved to the rear by the passenger side where Colon was sitting and fired one shot at close range into her head. (Tr. 1546–48, 1568, 1718–19, 2432.) Roman left, going towards the same building from which he had gotten the gun. (Tr. 1553–54.)

A short time later, Lugo asked Otero if "Carlos was dead already." (Tr. 1553.) When Otero responded that Ventura was dead, Lugo left the scene. (*Id.*)

Approximately three days after the shooting, Lugo and Roman went to Otero's apartment, carrying an Uzi. (Tr. 1584–85, 1752, 2443.) Lugo told Otero that it was the gun "used to fix that smart guy." (Tr. 1585, 2443–45.) Lugo and Roman asked Otero to keep the Uzi for them, but Otero said no. (Tr. 1586–87.)

After Otero was arrested (along with Lugo) for selling crack, Otero gave the police and the prosecutors information about the shootings of Ventura and Colon. (Tr. 1577–83, 1761–63, 1818, 2251–52.) Lugo and Roman were arrested on February 19, 1991. (Tr.2069–71, 2076–77, 2147–48, 2150, 2179–80, 2256–57, 2445–46.) [2]

At the close of the evidence, the People agreed to Lugo's counsel's motion to dismiss the intentional second degree murder count as to Colon (Tr. 2637–38), but the trial court denied the defense motion to dismiss the second degree depraved indifference murder count as to Colon. (Tr. 2638, 2652–54.) The trial court explained:

> I will charge the fourth count of the indictment charging the defendant with murder in the second degree under the theory of depraved indifference as it is applicable to the deceased, Marilyn Colon.
>
> The reason for that [is] … that the evidence in the case demonstrates that Mr. Lugo allegedly told Mr. Roman, "go do your duty, but be careful of the girl, she is pregnant."
>
> Although that demonstrates a lack of intent to kill her intentionally, it does not relieve him of the responsibility that flows from the fact that during the shooting of Mr. Ventura, Mr. Lugo is charged with knowing that the act of shooting someone with a semi-automatic Uzi creates a grave risk. It demonstrates a reckless engagement in conduct which creates a grave risk of death to another person, and that is all that he is charged with foreseeing.

---

2. The defense case consisted of a single witness, Ramona Garcia (Tr. 2578–631) who testified that she was a drug addict who sold crack for Ventura (Tr. 2580–81, 2583–84, 2616), and that on December 29–30, 1990 she saw a car drive up and two men get out of the car and shoot Ventura and Colon with an Uzi. (Tr. 2587–90.) The two men were not Lugo and Roman. (Tr. 2594–95.)

That's the responsibility of knowing that there's a grave risk of death to another person and nonetheless, sets forth this dangerous activity by a person acting in concert with him, which end up in the death of a second person, to wit, Miss Colon.

Accordingly, based on that reasoning, the Court will charge depraved indifference as to defendant Lugo, as it is applicable to the deceased, Marilyn Colon. (Tr. 2652–53.) Defense counsel noted that the evidence, viewed most favorably to the State, was "one person telling another one to kill person 'X' and then shots are fired directly at that person 'X', . . . bullets are not sprayed," and that after that was completed, "the shooter heard screaming, and then returned in a completely separate and different act and then intentionally shot person 'A'." (Tr. 2655–56.) The trial court felt that was a factual argument to be presented to the jury. (Tr. 256–57.) [3]

### Testimony Concerning Colon's Pregnancy

In a pretrial ruling concerning the issue of Colon's pregnancy, over Lugo's objection, the trial court allowed the assistant medical examiner to testify that Colon was pregnant at the time of the shootings. (*e.g.*, Tr.1999, 2019), noting the relevance of this evidence to the depraved indifference murder charges against Lugo. (3/29/94 Pretrial Tr. 16–25.) The trial judge held that he was going to allow the evidence that Ms. Colon was pregnant because the People informed him they would introduce evidence that Lugo said to " 'be careful of the woman [Colon] because she is pregnant.' " (3/29/94 Pretrial Tr. 17–18, 22, 25.) However, the court prohibited the prosecution from offering evidence that Colon was nine months pregnant or that Colon gave birth to a live baby before she died, or that the baby was alive at the time of trial. (3/29/94 Pretrial Tr. 17–25; Tr.2019–21.)

At trial itself, Lugo made no objection to testimony concerning his statement to Roman regarding Colon's pregnancy. (*E.g.*, Tr. 1526–28, 1538, 1549, 1710–15, 2429–31), which he used for his own benefit. (*E.g.*, Tr. 2571–74.)

### The Prosecutor's Summation

During summations, the prosecutor stated:

Now, this case is not a drug case, However, drugs are very important for the motive in this murder. This case is about the snuffing out of two human lives. The issue is not whether the drug dealer has a right to be protected. The issue is not whether a drug dealer's life is more important or less important than anyone else's. Everyone hates drug dealers, everyone hates drugs. Drugs are ruining our community, our families, our children, our nation.

[DEFENSE COUNSEL:] Objection.

THE COURT: Don't let that argument create a passion in you that will lead you to disregard the cool, calm evaluation of the evidence which will be your responsibility.

. . . .

[THE PROSECUTOR]: Also bullets can stray and hit innocent bystanders. We do not live in the wild west, we must all follow the law because when bullets fly, innocents die.

. . . .

A look, a glance, a stare, people are murdered every day for the stupidest of reasons, over nonsense.

(Tr. 2824–25, 2836.) Defense counsel objected both to the first and third paragraph of remarks quoted above. (Tr. 2824–25, 2836.) The prosecutor also mistakenly represented in summation that the murder weapon had been found. (Tr.

---

**3.** Lugo's counsel never made that argument to the jury, however, focusing instead on weaknesses in the prosecutor's entire case. (*See generally* Tr. 2781–821.) This obviously was a strategic decision to seek a not guilty verdict on both counts, as opposed to admitting to telling Roman to shoot Ventura but to be careful of Colon.

(Tr. 2885.) Defense counsel's objection was sustained. (Tr. 2885–86.)

### The Trial Court's Charge to the Jury

In its preliminary instructions to the jury at the very beginning of the trial, the trial judge told the jury that "[t]he defendants, each of them have pled not guilty to the indictment, and according to the law, the People now have the burden to prove each defendant guilty beyond a reasonable doubt. The defendants need not prove anything. Each defendant is presumed to be innocent." (Tr. 1356.)

In the final jury charge, the trial judge first instructed the jury about the presumption if innocence:

In this and every criminal case the accused is presumed to be innocent. That presumption remains with the defendant throughout the trial, until and unless the defendant's guilt is proven beyond a reasonable doubt. That presumption of innocence continues right through the trial. It exists at this moment and it accompanies you to the jury room, and the only way it can be destroyed, the only way it can be taken is by all of our agreeing, unanimously, that based upon the evidence presented, you are convinced beyond a reasonable doubt that the defendant is, indeed, guilty. Only if the evidence which you accept and believe convinces you beyond a reasonable doubt that the defendant is guilty can the presumption be discarded and only then can a verdict of guilty be returned.

This burden remains upon the prosecution throughout the trial and never shifts to the defendant. No defendant is required to prove his innocence and each element of every crime submitted to you must be proven beyond a reasonable doubt. . . .

(Tr. 3013–14.)

The judge then spent almost five transcript pages explaining to the jury the proof beyond a reasonable doubt standard:

So, now I discuss with you the constitutionally mandated standard of proof in all criminal cases, that of proof of guilt beyond a reasonable doubt. The standard required in all criminal cases is proof of guilt beyond· a reasonable doubt. That standard, however, does not require that the People prove guilt beyond all doubt. It does not require that the People prove guilt to a scientific or a mathematical certainty or beyond a shadow of a doubt, whatever that means.

It does require that the People prove guilt beyond a reasonable doubt and that is the highest standard of proof known to the law. There is no higher standard. Our law, therefore, requires that before this jury may convict the defendant, each of you must be satisfied that the believable evidence is sufficient to convince you beyond a reasonable doubt that the defendant is, in fact, guilty. . . .

*A doubt of a defendant's guilt to be a reasonable doubt must be one for which some reason can be given.* The doubt to be a reasonable doubt must arise either because of the nature and quality of the evidence or because of the insufficiency of the evidence. . . .

A doubt of a defendant's guilt is not reasonable if, instead of being based upon your evaluation of the nature and quality of the evidence and the sufficiency, it is instead, based upon a whim or a guess or a feeling that a juror may have that's unconnected with the evidence in the case. A doubt of the defendant's guilt is not reasonable if it is based upon a mere desire by a juror to avoid what the juror now discovers to be a disagreeable responsibility.

I therefore repeat, a doubt of a defendant's guilt, in order to be a· reasonable doubt, must arise either because of the nature and quality of the evidence or because of the insufficiency of the evidence in this case.

Therefore, examine, inspect, weigh, judge and evaluate all of the evidence in

this case. A reasonable doubt, our law says is an actual doubt, one that you are conscious of having, after you have carefully reviewed all of the evidence presented in this courtroom during this trial.

If after doing so you then feel uncertain and not fully convinced of the defendant's guilt, and you are satisfied that you are acting as a reasonable person should act in a matter of this importance, then that is a reasonable doubt to which the defendant is entitled to the benefit.

Review the evidence, inspect it and weigh it and judge it and, if after doing so you find the People have not proven the defendant's guilt beyond a reasonable doubt then find the defendant not guilty.

On the other hand, if after reviewing and inspecting and weighing all the evidence you are convinced beyond a reasonable doubt that the defendant is guilty, then your verdict must be guilty.

(Tr. 3013–19, emphasis added.) It is the underlined sentence that forms the basis of Lugo's habeas challenge to the jury charge. Defense counsel did not object to any part of the trial court's reasonable doubt charge. (*See* Tr. 3056–57.)

As to the crimes themselves, the trial judge instructed the jury as to accessorial liability and acting in concert:

In each of the counts that are pending against Mr. Lugo, the defendant is accused of acting in concert with another person. Before charging you with respect to the meaning of each of the crimes being submitted to you for your consideration, I am going to advise you what the law means by the phrase "acting in concert."

By using the phrase acting in concert, the People claim that the defendant, combined with another person to commit the unlawful acts . . . .

Where an unlawful act is sought to be effected, accomplished and two or more persons combined, actually by a common purpose, for the purpose of accomplishing that end, and they work together in any way and in furtherance of the unlawful scheme, each and every one of the parties becomes a member of that unlawful undertaking.

All persons who intentionally participate in the commission of a crime were accomplices of one another and, therefore, are legally guilty of that crime. Each is legally responsible for the acts of the other.

(Tr. 3020–21.)

The court went on to explain the depraved indifference second degree murder count as to Marilyn Colon:

A person is guilty of murder in the second degree when under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person and thereby causes the death of another person. I call your particular attention to the distinguishing feature of this crime which is that the defendant is charged with while acting in concert with Mr. Roman, with having recklessly created a grave risk of death to another person—. . . in the fourth count Marilyn Colon—under circumstances evincing a depraved indifference to human life. A person recklessly creates a grave risk of death to another person when he is aware of and consciously disregards a substantial and unjustifiable risk that a grave risk of death will result. . . .

(Tr. 3038.) The trial judge explained the six elements that the People needed to prove beyond a reasonable doubt to prove depraved indifference murder:

Therefore, in order for you to find the defendant guilty of this crime, the People are required to prove from all of the evidence in the case beyond a reasonable doubt each of the following . . . six elements under the fourth count, the distinguishing feature being the person

named in the counts, . . . the fourth count it will be Marilyn Colon.

. . . .

So those are the six elements under the third and fourth counts. Let me review them with you once again. The People have an obligation to prove each of these elements beyond a reasonable doubt:

One, that on or about December 30, 1990, in the County of the Bronx, . . . the defendant Manual Lugo acting on concert with Mr. Roman shot Marilyn Colon, thereby creating a grave risk of death to another person, to witness, Marilyn Colon.

Two, that at the time he so acted the defendant Manual Lugo, acting in concert with Mr. Roman, was aware of the substantial and unjustifiable risk that a grave risk of death would result.

Three, that the defendant manual Lugo, acting in concert with Mr. Roman consciously, disregarded the substantial and unjustifiable risk that a grave risk of death would result.

Four, that the defendant's conscious disregard of this risk constituted a gross deviation from the standard of conduct that a reasonable person would observe in that situation.

Five, that the defendant, Mr. Lugo, while acting in concert with Mr. Roman, acted under circumstances evincing a depraved indifference to human life.

And, six, that the defendant Manual Lugo, while acting in concert with Mr. Roman, caused the death of, in the third count a Carlos Ventura, in the fourth count Marilyn Colon.

If you find the People have proved each of those six elements beyond a reasonable doubt . . . under the fourth count, find the defendant guilty of that charge under the fourth count. If you find that the People have failed to prove

one or more under either count you must find him not guilty of those charges.

(Tr. 3040–45.) Defense counsel did not object to the acting in concert or deliberate indifference charges. (*See* Tr. 3056–57.)

Upon receipt during deliberations of a jury note requesting further explanation of the depraved indifference murder charge (Tr.3086), the trial court provided a supplemental instruction that reiterated the definitions of depraved indifference (Tr. 3086–93), and also included this statement:

> If two people get together and one of them directs, if you find this to be so, beyond a reasonable doubt, by the evidence presented, someone to go to the back of a vehicle with an Uzi and fire the Uzi into the vehicle where there are two people sitting in the front of the car, does that create a substantial and unjustifiable risk that a grave risk of death could result or would result?

(Tr. 3088.) Defense counsel objected to the court's statement about firing the Uzi into the car, arguing that Roman shot Ventura, then "retreated" and then came back to shoot Colon, two separate acts. (Tr. 3094–95.) The court rejected the argument, but noted the defense's exception to the charge. (Tr. 3095–96.)

### PROCEDURAL HISTORY

#### Lugo's Conviction and Sentencing

On April 27, 1994, the jury convicted Lugo on two counts of murder in the second degree, *i.e.*, as to both Ventura and Colon. (Tr. 3103–05.)[4] On May 24, 1994, the trial court sentenced Lugo to consecutive terms of 20 years to life and 25 years to life, for a total of 45 years to life. (Sentence Tr. 35–36; *see* Pet. ¶¶ 1–4.)

---

**4.** That same day, the separate Roman jury found Lugo's co-defendant Wilfredo Roman

not guilty on all counts. (Tr. 3108–12.)

### Lugo's Direct Appeal

Lugo appealed to the First Department, arguing that: (a) there was insufficient evidence to support his conviction (Affidavit of ADA Karen Swiger, Ex. 1: Lugo 1st Dep't Br. at 11–17), (b) the trial court improperly instructed the jury as to reasonable doubt (*id.* at 18–20), (c) comments made by the prosecutor were prejudicial (*id.* at 25–29), and (d) evidence of Colon's pregnancy was erroneously admitted into evidence (*id.* at 22–24, 29–30).

The First Department unanimously affirmed Lugo's conviction. *People v. Lugo,* 232 A.D.2d 236, 648 N.Y.S.2d 539 (1st Dep't 1996). First, the First Department held that "[t]he People presented overwhelming evidence of defendant's guilt of the crimes charged." *People v. Lugo,* 232 A.D.2d at 236, 648 N.Y.S.2d at 539. Second, the First Department rejected Lugo's assertion that the trial court's admission into evidence of Colon's pregnancy was prejudicial, explaining that:

> In light of the defendant's affirmative use of the fact that one of the victims was pregnant at the time of the shooting, he may not properly claim prejudice.... In any event, were we to review the issue, we would find that the trial court appropriately exercised its discretion in permitting limited evidence of this nature, as relevant to the issues of depraved indifference and identification.

*Id.*

Third, the First Department held that the trial court's reasonable doubt charge "did not impose any obligation upon the jurors to articulate reasons for such doubt, but merely 'define[d] the degree of clarity and coherence of thought necessary for the jurors to conclude that they harbor a reasonable doubt.'" *Id.* at 236–37, 648 N.Y.S.2d 539, 648 N.Y.S.2d at 540. Fourth, the First Department found that "the trial court's supplementary charge to the jury regarding depraved indifference murder conveyed the appropriate legal principles." *Id.* at 236, 648 N.Y.S.2d at 539. Finally, the First Department "considered defendant's additional claims of error and [found] no basis to disturb the judgment." *Id.* at 237, 648 N.Y.S.2d at 540.

Lugo sought leave to appeal to the New York Court of Appeals, raising: (a) the trial court's admission of evidence of Colon's pregnancy, (b) prejudicial comments by the prosecutor in her summation, and (c) the trial court's reasonable doubt charge. (Swiger Aff.Ex. 3: Lugo Leave Application Letter dated 12/17/96.) Lugo did not raise the sufficiency of the evidence issue. (*Id.*) On January 15, 1997, the New York Court of Appeals denied leave to appeal. *People v. Lugo,* 89 N.Y.2d 943, 655 N.Y.S.2d 894, 678 N.E.2d 507 (1997) (table).

### Lugo's Coram Nobis Petition

On January 15, 1998, Lugo filed a pro se petition for a writ of error coram nobis in the First Department (Swiger Aff.Ex. 5: Lugo's Coram Nobis papers), alleging ineffective assistance of appellate counsel based on his appellate counsel's failure to: (a) raise additional constitutional issues as to the jury charge (Swiger Aff.Ex. 5: Lugo Aff. ¶ 9), (b) notice and correct a deficient record (*id.* ¶ 19), and (c) investigate newly discovered evidence and bring a CPL § 440.10 motion (*id.* ¶¶ 6, 11–12, 15–17). (*See* Lugo Br. at 12.) On September 22, 1998, the First Department denied Lugo's coram nobis application. (Swiger Aff.Ex. 8: 9/22/98 1st Dep't Order.) On October 8, 1998, the New York Court of Appeals denied Lugo's application for leave to appeal. (Swiger Aff.Ex. 9: 10/8/98 Ct.App. Order.)

### Lugo's Federal Habeas Corpus Petition

Lugo's federal habeas corpus petition is dated November 10, 1998 and was received by the Court's Pro Se office on November 17, 1998. (Pet. at pp. 2, 7.) Lugo's petition asserts that: (a) there was insufficient evidence to support his conviction for Colon's murder (Pet.¶ 12(A)), (b) the trial court's reasonable doubt jury instruction deprived

him of a fair trial (Pet.¶ 12(B)), (c) comments by the prosecutor in summation were prejudicial (Pet.¶ 12(C)), (d) evidence of Colon's pregnancy was erroneously admitted into evidence, depriving Lugo of a fair trial (Pet.¶ 12(C)), and (e) ineffective assistance of appellate counsel (Pet. ¶ 12(D)).

## ANALYSIS

### I. *LUGO'S PETITION IS TIMELY UNDER THE AEDPA*

■ The State alleges that Lugo's habeas corpus petition is untimely under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)(1), alleging that Lugo failed to file his petition within one year from the "date on which his judgment of conviction became final by the conclusion of direct review." (State Br. at 4.)[5] Specifically, the State argues that the one-year limitations period expired on January 15, 1998, one year after the New York Court of Appeals denied Lugo's application for leave to appeal and, after taking into account the tolling of the limitations period during the pendency of Lugo's coram nobis application, Lugo needed to file his petition by September 22, 1998, and thus his November 1998 petition is untimely. (State Br. at 4–8.)

The State is incorrect in arguing that Lugo's conviction became final one year after his leave application was denied. The decisions in this Circuit (and the majority of other circuits that have faced the issue) hold that a judgment of conviction becomes final "when [the] time to seek direct review in the United States Supreme Court by writ of certiorari expire[s]." *Ross v. Artuz,* 150 F.3d 97, 98 (2d Cir.1998); *accord, e.g., Adams v. United States,* 173 F.3d 1339, 1342 (11th Cir. 1999) ("The Third and Tenth Circuits have

held that a judgment of conviction becomes final when the Supreme Court denies certiorari or the time expires for seeking certiorari."); *Kapral v. United States,* 166 F.3d 565, 570. (3d Cir.1999) ("if a defendant does not file a certiorari petition, the judgment of conviction does not become 'final' until the time for seeking certiorari review expires"); *United States v. Lacey,* No. 98–3030, 162 F.3d 1175 (table), 1998 WL 777067 at *1 (10th Cir. Oct.27, 1998); *Warren v. Garvin,* 97 Civ. 3243, 1999 WL 494117 at *1 (S.D.N.Y. July 13, 1999) (Patterson, D.J.); *Alexander v. Keane,* 991 F.Supp. 329, 334 n. 2 (S.D.N.Y. 1998) (Sotomayor, D.J.) (rejecting the argument that "the statute of limitations begins to run from the time the Court of Appeals affirmed the conviction without adding the ninety days in which a petition for certiorari could have been filed"); *Carrecedo v. Artuz,* No. 98 Civ. 7561, 1999 WL 336242 (S.D.N.Y. May 24, 1999) ("The weight of authority" is to utilize the 90–day cert. period, citing cases); *Torres v. Irvin,* 33 F.Supp.2d 257, 271 (S.D.N.Y.1998) (Cote, D.J. & Peck, M.J.); *Cowart v. Goord,* 97 Civ. 3865, 1998 WL 276213 at *2 (S.D.N.Y. May 29, 1998); *Hughes v. Irvin,* 967 F.Supp. 775, 778 (E.D.N.Y.1997); *Jones v. Artuz,* No. CV 97–2394, 1997 WL 876735 at *1 (E.D.N.Y. Sept.13, 1997); *but cf. Gendron v. United States,* 154 F.3d 672, 674 & nn. 1–2 (7th Cir.1998) ("we hold that federal prisoners who decide not to seek certiorari with the Supreme Court will have the period of limitations begin to run on the date [the Court of Appeals] issues the mandate in their direct criminal appeal," while leaving open the question for state prisoners because of the different language in 28 U.S.C. § 2244 and § 2255). Here, the New York Court of Appeals denied leave to appeal on January 15, 1997. Thus, the ninety-day period to seek

---

5. In a letter to this Court seeking an extension of time to respond to the petition on the merits, the State represented that it would "not be seeking dismissal pursuant to the AEDPA's time bar (although I may have some argument to footnote)." (1/12/99 Letter from State.) Based on the State's Letter, the Court could have considered this argument waived. However, since it is clear that Lugo's petition is timely, the Court will not address the waiver issue, except to note disapproval of the State's actions.

certiorari expired, and Lugo's conviction became final, on April 15, 1997.

Pursuant to 28 U.S.C. § 2244(d)(2), the one-year statute of limitations is tolled during the pendency of a "properly filed application for State post-conviction or other collateral review."[6] Lugo filed his coram nobis petition in the First Department on January 15, 1998, which denied it on September 22, 1998, 250 days later.[7] Allowing for these 250 days, Lugo's deadline to file his habeas petition was December 21, 1998. Therefore, Lugo's petition, filed sometime between November 10 and 17, 1998, was timely. Indeed, the State concedes that if "petitioner's year to file [his habeas petition] began at the expiration of his time to seek *certiorari*, the petition is timely." (State Br. at 8 n. 2.)

## II. *LUGO'S CLAIM REGARDING THE ADMISSION OF EVIDENCE OF CO-LON'S PREGNANCY IS NOT EXHAUSTED AND IS PROCEDURALLY BARRED*

Section 2254 codifies the exhaustion requirement, providing that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless is appears that—(A) the applicant has exhausted the remedies available in the courts of the State; ...." 28 U.S.C. § 2254(b)(1)(A); *see, e.g., O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 1731, 144 L.Ed.2d 1 (1999); *Rose v. Lundy,* 455 U.S. 509, 515–16, 102 S.Ct. 1198, 1201–02, 71 L.Ed.2d 379 (1982) ("The exhaustion doctrine existed long before its codification by Congress in 1948 ... in 28 U.S.C. § 2254"); *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d

438 (1971); *Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir.1994), *cert. denied,* 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995); *Pesina v. Johnson,* 913 F.2d 53, 54 (2d Cir.1990); *Daye v. Attorney General,* 696 F.2d 186, 190–94 (2d Cir.1982) (en banc), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984); *Orraca v. Walker,* 98 Civ. 4459, 1999 WL 427992 at *5–6 (S.D.N.Y. June 18, 1999) (McKenna, D.J. & Peck, M.J.); *Otero v. Stinson,* 51 F.Supp.2d 415, 418–20 (S.D.N.Y. 1999) (Baer, D.J. & Peck, M.J.); *Jordan v. Lefevre,* 22 F.Supp.2d 259, 266 (S.D.N.Y. 1998) (Mukasey, D.J. & Peck, M.J.); *Camarano v. Irvin,* 902 F.Supp. 358, 364 (S.D.N.Y.1994) (Patterson, D.J. & Grubin, M.J.), *aff'd mem.,* 122 F.3d 1055 (2d Cir. 1995); *Lynes v. Mitchell,* 894 F.Supp. 119, 122 (S.D.N.Y.1995) (Patterson, D.J. & Grubin, M.J.), *aff'd mem.,* 104 F.3d 355 (2d Cir.1996). As the Supreme Court has made clear, "[t]he exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose v. Lundy,* 455 U.S. at 518, 102 S.Ct. at 1203; *accord, e.g., O'Sullivan v. Boerckel,* 526 U.S. at ——, ·119 S.Ct. at 1732; *Jordan v. Lefevre,* 22 F.Supp.2d at 266.[8]

█ The Second Circuit determines whether a claim has been exhausted by applying a two-step analysis:

> First, the petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts.... Second, having presented his federal constitutional claim to an appropriate state court, and having been de-

---

**6.** 28 U.S.C. § 2244(d)(2) states that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

**7.** The Court need not consider whether the period is further tolled during the time Lugo

sought leave to appeal the First Department's denial of his coram nobis application to the New York Court of Appeals.

**8.** For a general discussion of whether a district court should dismiss a mixed petition without prejudice under the AEDPA, *see, e.g., Orraca v. Walker,* 53 F.Supp.2d 605, 610–12; *Otero v. Stinson,* 1999 WL 412865 at *5–7.

nied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim.

*Diaz v. Coombe,* ·97 Civ. 1621, 1997 WL 529608 at *3 (S.D.N.Y. June 12, 1997) (Mukasey, D.J. & Peck, M.J.) (quoting *Klein v. Harris,* 667 F.2d 274, 282 (2d Cir.1981)); *accord, e.g., O'Sullivan v. Boerckel,* 526 U.S. at ‒‒ ‒ ‒‒, 119 S.Ct. at 1732–34; *Jordan v. Lefevre,* 22 F.Supp.2d at 266; *Boyd v. Hawk,* 94 Civ. 7121, 1996 WL 406680 at *3 (S.D.N.Y. May 31, 1996) (Batts, D.J. & Peck, M.J.); *Ehinger v. Miller,* 928 F.Supp. 291, 293 (S.D.N.Y. 1996) (Mukasey, D.J. & Peck, M.J.); *Camarano v. Irvin,* 902 F.Supp. at 364; *Lynes v. Mitchell,* 894 F.Supp. at 122.

▇ "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." *Daye v. Attorney General,* 696 F.2d at 191; *accord, e.g., O'Sullivan v. Boerckel,* 526 U.S. at ‒‒‒‒, 119 S.Ct. at 1732; *Picard v. Connor,* 404 U.S. at 275–76, 92 S.Ct. at 512; *Jones v. Vacco,* 126 F.3d 408, 413 (2d Cir.1997); *Diaz v. Coombe,* 1997 WL 529608 at *3; *Camarano v. Irvin,* 902 F.Supp. at 364; *Lynes v. Mitchell,* 894 F.Supp. at 122. The Second Circuit has held that a federal habeas petitioner must have alerted the state appellate court that a federal constitutional claim is at issue. *E.g., Jones v. Vacco,* 126 F.3d at 413–14; *Grady v. LeFevre,* 846 F.2d 862, 864 (2d Cir.1988); *Petrucelli v. Coombe,* 735 F.2d 684, 688–89 (2d Cir.1984); *Daye v. Attorney Gen.,* 696 F.2d at 191; *Diaz v. Coombe,* 1997 WL 529608 at *3. In *Daye,* the Second Circuit en banc stated:

[T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to

mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye v. Attorney General,* 696 F.2d at 195; *accord, e.g,. Levine v. Commissioner of Correctional Servs.,* 44 F.3d 121, 124 (2d Cir.1995); *Grady v. LeFevre,* 846 F.2d at 864; *Garofolo v. Coomb,* 804 F.2d 201, 206 (2d Cir.1986); *Jordan v. Lefevre,* 22 F.Supp.2d at 266; *Petrucelli v. Coombe,* 735 F.2d at 688; *Diaz v. Coombe,* 1997 WL 529608 at *3; *Washington v. Superintendent, Otisville Correctional Facility,* 96 Civ. 2729, 1997 WL 178616 at *3–4 (S.D.N.Y. April 11, 1997); *Boyd v. Hawk,* 1996 WL 406680 at *3–4; *Connolly v. Artuz,* No. 93 CV 4470, 1995 WL 561343 at *2 (E.D.N.Y. Sept.15, 1995); *Saunders v. Riley,* 90 Civ. 4738, 1991 WL 95352 at *5 (S.D.N.Y. May 30, 1991); *Martin v. Scully,* 748 F.Supp. 159, 166 (S.D.N.Y.1990) (Patterson, D.J. & Grubin, M.J.).

▇ In the present petition, Lugo argues that the trial court improperly admitted the medical examiner's testimony that Colon was pregnant at the time of the shooting. (Pet.¶ 12(C); Lugo Br. at 22–24.) Lugo raised a similar argument in his appeal to the First Department. However, a closer inspection of his appellate brief reveals that, under the *Daye* standard, this ground was not fairly presented to the state court as a constitutional ˙claim. Lugo's argument on his state appeal was based solely on state court decisions that did not employ federal constitutional analysis, nor did he refer to any provision of the constitution. (*See* Swiger Ex. 1: Lugo 1st Dep't Br. at 21–25, 27, 29–30.) Therefore, this claim has not been "fairly presented" to the state court as constitutional claims under *Daye* and its progeny. *See, e.g., Boyd v. Hawk,* 1996 WL 406680 at *4 (claims not fairly presented where, "[o]n its face, it is obvious that [petitioner's] brief neither relies on pertinent federal cases employing constitutional analysis nor relies on state cases employing constitutional analysis in like fact situations");

*Mendez v. Superintendent, Adirondack Correctional Facility*, 94 Civ. 6500, 1996 WL 66117 at \*2 (S.D.N.Y. Feb.14, 1996) (" '[A]lleging lack of a fair trial does not convert every complaint about evidence or a prosecutor's summation into a federal due process claim.' " quoting *Daye*), *aff'd mem.*, 104 F.3d 356 (2d Cir.1996); *Jones v. Hood*, 826 F.Supp. 82, 85 (W.D.N.Y.1993) (claim not fairly presented where "[p]etitioner relied solely on state law in asserting his claims.... He cited no federal caselaw whatsoever, and the state cases and authorities cited did not involve similar fact situations or employ any relevant constitutional analysis [nor] call to mind any specific fact protected by the constitution ..."); *Marti v. Riley*, No. CV. 88–3044, 1989 WL 117075 at \* 1 (E.D.N.Y. Sept.25, 1989) (claim not fairly presented where petitioner "relied solely on state cases, and neither they nor petitioner's factual arguments employed, or caused the state court to consider, the applicable constitutional test" for petitioner's claim). Thus, Lugo's claim about evidence of Colon's pregnancy is unexhausted.

■ " 'For exhaustion purposes, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." ' " *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir.1997) (quoting *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir.1991) (quoting *Harris v. Reed*, 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 1043 n. 9, 103 L.Ed.2d 308 (1989))); *accord, e.g., Castille v. Peoples*, 489 U.S. 346, 350, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989) ("It would be inconsistent with [§ 2254(b) ], as well as with underlying principles of comity, to mandate recourse to state collateral review whose results

have effectively been predetermined"); *Bossett v. Walker*, 41 F.3d at 828 ("if the petitioner no longer has 'remedies available' in the state courts under 28 U.S.C. § 2254(b), we deem the claims exhausted"); *Jordan v. Lefevre*, 22 F.Supp.2d at 269; *Redd v. Quinones*, 98 Civ. 2604, 1998 WL 702334 at \*3 (S.D.N.Y. Oct.7, 1998) ("While petitioner's failure to 'fairly present' his claim in state court leads to a determination that the claim is exhausted, at the same time this failure results in a procedural default of the claim."); *Benitez v. Senkowski*, 97 Civ. 7819, 1998 WL 668079 at \*8 n. 7 (S.D.N.Y. Sept.17, 1998) (Cote, D.J. & Peck, M.J.); *Chisolm v. Costello*, 94 Civ. 3201, 1998 WL 167332 at \*3 (S.D.N.Y. Apr.8, 1998); *Camarano v. Irvin*, 902 F.Supp. at 364; *Lynes v. Mitchell*, 894 F.Supp. at 122.

"In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." *Grey v. Hoke*, 933 F.2d at 120; *accord, e.g., Camarano v. Irvin*, 902 F.Supp. at 364; *Lynes v. Mitchell*, 894 F.Supp. at 122. Consequently, such procedurally barred claims are "deemed exhausted" by the federal courts. *Reyes v. Keane*, 118 F.3d at 139; *see also, e.g., Bossett v. Walker*, 41 F.3d at 828; *Washington v. James*, 996 F.2d 1442, 1446–47 (2d Cir.1993), *cert. denied*, 510 U.S. 1078, 114 S.Ct. 895, 127 L.Ed.2d 87 (1994); *Grey v. Hoke*, 933 F.2d at 120–21; *Jordan v. Lefevre*, 22 F.Supp.2d at 269; *Redd v. Quinones*, 1998 WL 702334 at \*3.

It is clear that Lugo is now barred from raising this constitutional claim in State court because it could have been raised on direct appeal, but was not.[9] As the Second Circuit explained in *Washington v. James*:

9. New York CPL § 440.10(2)(c) states, in pertinent part:

2. Notwithstanding the provisions of subdivision one, the court must deny a motion to vacate a judgment when:

....

(c) Although sufficient facts appear on the record of the proceedings underlying the

judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to ... raise such ground or issue upon an appeal actually perfected by him....

Consequently, we do not believe [Petitioner] has fairly presented to the state courts his constitutional objection.... [T]he state courts have not had an opportunity to address the federal claim raised on habeas review and this normally would preclude our review of that claim....

As we have already noted, this preclusion is not technically the result of a failure to exhaust state remedies, but is due to a procedural default. [Petitioner] no longer has the right to raise his claim under New York law either on direct appeal, *see* McKinney's 1993 Revised N.Y. Court Rules § 500.10(a), or on collateral review. New York's collateral procedures are unavailable because appellant could have raised the [federal constitutional] claim on direct review but did not. *See* N.Y.Crim.Proc.Law § 440.10(2)(c). Therefore, [Petitioner] has no further recourse in state court. *See* 28 U.S.C. § 2254(c); *Grey v. Hoke*, 933 F.2d [at] 120.... Because he failed to raise his claim in state court and no longer may do so, his claim is procedurally defaulted.

*Washington v. James*, 996 F.2d at 1446–47; *see also, e.g., Reyes v. Keane*, 118 F.3d at 139 ("Section 440.10(2)(c) of New York's Criminal Procedure Law *mandates* that the state court deny any 440.10 motion where the defendant unjustifiably failed to argue such constitutional violation on direct appeal despite a sufficient record.") (emphasis added); *Bossett v. Walker*, 41 F.3d at 829; *Redd v. Quinones*, 1998 WL 702334 at *3; *Camarano v. Irvin*, 902 F.Supp. at 367 n. 3 (finding federal consti-

tutional claim not fairly presented to state court where presented only as state law issue, and procedurally barred because it could have been raised on appeal).

■ "[T]o avoid [such] a procedural default, a habeas petitioner must "'demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice,'" *i.e.,* a showing of 'actual innocence.'" *Jordan v. Lefevre*, 22 F.Supp.2d at 269 (quoting *Gibriano v. Attorney General*, 965 F.Supp. 489, 493 n. 5 (S.D.N.Y.1997) (Sprizzo, D.J. & Peck, M.J.)); *see also, e.g., Camarano v. Irvin*, 902 F.Supp. at 364–65; *Lynes v. Mitchell*, 894 F.Supp. at 122–23. Here, Lugo has not attempted to show cause and prejudice or "actual innocence," and thus this claim must be denied.[10]

### III. *LUGO'S INSUFFICIENCY OF THE EVIDENCE CLAIM IS NOT EXHAUSTED AND IS PROCEDURALLY BARRED FOR HABEAS CORPUS REVIEW*

■ "Exhaustion of available state remedies requires presentation of the claims to the highest state court from which a decision can be had." *Daye v. Attorney General*, 696 F.2d 186, 191 n. 3 (2d Cir.1982); *accord, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, ——–——, 119 S.Ct. 1728, 1732–34, 144 L.Ed.2d 1 (1999); *Bossett v. Walker*, 41 F.3d 825, 828 (1994) ("To fulfill the exhaustion requirement, a petitioner must have presented the substance of his federal claims 'to the highest court of the pertinent state.'"); *Grey v. Hoke*, 933 F.2d

---

**10.** In any event, this claim is frivolous. At trial, Lugo made no objection to admission into evidence of his statement ordering Roman to shoot Ventura: "go do what you have to do, go do your job. But be careful of his wife because she's pregnant." (*E.g.*, Tr. 1526, 1538, 1549.) Indeed, that statement was the basis of his defense in arguments to the trial court, on appeal and in his habeas petition, that he did not intend for Roman to shoot Colon. Lugo's argument that that reference to Colon's pregnancy was permissible but ad-

mission of the medical examiner's reference to her pregnancy was a constitutional error (Lugo Br. at 22), is frivolous. *See, e.g., United States v. Aiello*, 771 F.2d 621, 631 (2d. Cir. 1985) ("appellants here made 'affirmative use of [the evidence] in an effort to exculpate [themselves].' ... Their claim of substantial prejudice from the admission of [that evidence] is thus seriously compromised.") (quoting *United States ex rel. Terry v. Henderson*, 462 F.2d 1125, 1130 (2d. Cir. 1972)).

117, 119 (2d Cir.1991) ("a petitioner must present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition"); *Pesina v. Johnson,* 913 F.2d 53, 54 (2d Cir.1990) ("We have held that the exhaustion requirement mandates that federal claims be presented to the highest court of the pertinent state before a federal court may consider the petition.") (citing *Daye*); *Jordan v. Lefevre,* 22 F.Supp.2d 259, 261, 266–67 (S.D.N.Y.1998) (Mukasey, D.J. & Peck, M.J.); *Bass v. Scully,* No. CV–92–0349, 1995 WL 347040 at *2 (E.D.N.Y. May 25, 1995); *Camarano v. Irvin,* 902 F.Supp. 358, 364 (S.D.N.Y. 1994) (Patterson, D.J. & Grubin, M.J.) ("Exhaustion requires a petitioner to have fairly presented at each available level of the state courts the same federal constitutional claims, legally and factually, raised in his or her petition to the federal court so that the state courts, including the state's highest court, will have had an opportunity to pass on them"), *aff'd mem.,* 122 F.3d 1055 (2d Cir.1995); *Lynes v. Mitchell,* 894 F.Supp. 119, 122 (S.D.N.Y. 1995) (Patterson, D.J. & Grubin, M.J.), *aff'd mem.,* 104 F.3d 355 (2d Cir.1996); *Brooks v. Kelly,* No. 88–CV–0631, 1993 WL 350188 at *3 (W.D.N.Y. Sept.10, 1993); *Thebner v. Miller,* 788 F.Supp. 714, 717 (E.D.N.Y.1992).

■ Lugo's first habeas claim here is that the evidence at trial was insufficient to support his conviction of second degree murder. (Pet.¶ 12(A); Lugo Br. at 13–16.) Lugo raised this argument in his appeal to the First Department, but did not raise it in his application for leave to appeal to the New York Court of Appeals. (*See* pages 12–13 above.) Therefore, this claim is not exhausted. *See, e.g., Jordan v. Lefevre,* 22 F.Supp.2d at 261, 266–67 ( & cases cited therein).

Lugo, however, is procedurally barred from now raising this claim in the New York Court of Appeals. As the Second Circuit explained in *Grey v. Hoke:*

Here, New York procedural rules plainly bar petitioner from attempting to raise [the claims he raised before the Appellate Division but not in his application for leave to appeal] before the New York Court of Appeals. Petitioner cannot again seek leave to appeal these claims in the Court of Appeals because he has already made the one request for leave to appeal to which he is entitled. *See* N.Y. Court Rules § 500.10(a). Collateral review of these claims is also barred because the issues were previously determined on the merits on direct appeal. *See* N.Y.Crim.Proc.Law § 440.10(2)(a); *see also* N.Y.Crim.Proc. Law § 440.10(2)(c) (barring review if a claim could have been raised on direct review) . . . .

We agree with the state, however, that petitioner's forfeiture in state court of [the claim not adequately raised before the N.Y. Court of Appeals] bars him from litigating the merits of those claims in federal habeas proceedings, absent a showing of cause for the procedural default and prejudice resulting therefrom. *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 2647, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes,* 433 U.S. 72, 87–91, 97 S.Ct. 2497, 2506–2509, 53 L.Ed.2d 594 (1977). Petitioner makes no showing of cause or of prejudice. The [claims not raised before the Court of Appeals] must therefore be dismissed without reaching the merits.

*Grey v. Hoke,* 933 F.2d at 120–21; *accord, e.g., Jordan v. Lefevre,* 22 F.Supp.2d at 269; *Bass v. Scully,* 1995 WL 347040 at *3; *Marrero v. Keane,* No. 99 Civ. 3573, 1995 WL 66660 at *2 (S.D.N.Y. Feb.16, 1995); *Camarano v. Irvin,* 902 F.Supp. at 364; *Lynes v. Mitchell,* 894 F.Supp. at 122; *Brooks v. Kelly* 1993 WL 350188 at *3; *Thebner v. Miller,* 788 F.Supp. at 717–18; *see also, e.g., Bossett v. Walker* 41 F.3d at 828–29. As explained above, "[a]s modified and clarified by more recent Supreme Court case law, to avoid a procedural default, a habeas petitioner must " 'demonstrate cause for the default and actual

prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice,' *i.e.*, a showing of 'actual innocence.' " *Jordan v. Lefevre*, 22 F.Supp.2d at 269.

■■■ Here, Lugo has not alleged cause and prejudice, nor has he made a showing of actual innocence.[11] Thus, his sufficiency of the evidence claim should be dismissed as procedurally defaulted.

## IV. *THE TRIAL COURT'S REASONABLE DOUBT JURY INSTRUCTION WAS PROPER*

Lugo argues that the trial court's reasonable doubt charge obligated jurors to articulate their reasons for their doubts, thereby imposing an "affirmative obligation to defend his or her position to other jurors." (Pet.¶ 12(B); *see also* Lugo Br. at 19–20.)

Over 25 years ago, in 1973, the Supreme Court noted that it was already a "well established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146–147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *accord, e.g., Mason v. Schriver*, 14 F.Supp.2d 321, 330 (S.D.N.Y.1998) (Preska, D.J. & Peck, M.J.); *see also, e.g., Cage v. Louisiana*, 498 U.S. 39, 41, 111 S.Ct. 328, 329, 112 L.Ed.2d 339 (1990) ("In construing the instruction, we consider how reasonable

jurors could have understood the charge as a whole."); *United States v. Park*, 421 U.S. 658, 674, 95 S.Ct. 1903, 1912, 44 L.Ed.2d 489 (1975) (quoting *Cupp* ).

■■ In *Victor v. Nebraska*, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), the Supreme Court noted that the beyond a reasonable doubt standard "is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course." *Id.* at 6, 114 S.Ct. at 1243. Since "the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof," the instructions must "correctly conve[y] the concept of reasonable doubt" when "taken as a whole." *Id.*

■■ Lugo challenges that part of the trial court's instruction which stated that "[a] doubt of a defendant's guilt to be a reasonable doubt must be one for which some reason can be given." (Tr. 3016–17.) Lugo argues that this instruction impermissibly shifted the burden of proof to the defense by requiring each juror to be able to give an explanation for their doubts. (Lugo Br. at 17–20.)

While some Second Circuit decisions have held that jury instructions that state or imply that jurors should be able to give a reason for their doubts are "not approved" and perhaps are "unwise," the Second Circuit also has said that such an

---

11. Lugo claims that counsel was ineffective for failing to raise issues in the New York Court of Appeals, and that this is "cause." (*See* Lugo Traverse Br. at 23.) Ineffective assistance of counsel can represent cause for a procedural default. *See also, e.g., Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2646, 91 L.Ed:2d 397 (1986) ("Ineffective assistance of counsel, then, is cause for a procedural default."); *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir.1997); *Simmons v. Ross*, 965 F.Supp. 473, 478 (S.D.N.Y.1997); *Avincola v. Stinson*, 97 Civ. 1132, slip op. at 20 (S.D.N.Y. March 19, 1999) (Peck, M.J.), adopted by Order (S.D.N.Y. July 7, 1999) (Scheindlin, D.J.); *Hurd v. Keane*, 97 Civ. 2991, 1997 WL 582825 at *2 (S.D.N.Y. Sept.19, 1997) (Scheindlin,

D.J.). "However, ... the exhaustion doctrine ... generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray v. Carrier*, 477 U.S. at 489, 106 S.Ct. at 2646; *accord, e.g., Reyes v. Keane*, 118 F.3d at 139–40; *Avincola v. Stinson*, 97 Civ. 1132, slip op. at 20; *Redd v. Quinones*, 98 Civ. 2604, 1998 WL 702334 at *3 (S.D.N.Y. Oct.7, 1998); *Taylor v. Mitchell*, 939 F.Supp. 249, 255 (S.D.N.Y.1996); *Gaiter v. Lord*, 917 F.Supp. 145, 149 (E.D.N.Y.1996). Lugo never raised such a claim in his coram nobis petition, and thus has failed to exhaust it, and so it cannot be considered as "cause" for any other procedural default.

instruction is "not erroneous." *Chalmers v. Mitchell,* 73 F.3d 1262, 1268 (2d Cir. 1996) (citing *United States v. Davis,* 328 F.2d 864, 868 (2d Cir.1964) (Friendly, C.J.), & *Barber v. Scully* 557 F.Supp. 1292, 1296 (S.D.N.Y.1983), *aff'd,* 731 F.2d 1073 (2d Cir.1984)); *see also, e.g., Pinto v. Stinson,* No. 96–2655, 129 F.3d 114 (table), 1997 WL 664866 at *1 (2d Cir. Oct.21, 1997) ("While this Court has disapproved of [reasonable doubt jury instructions including the phrase a doubt for which you can give a substantial reason:] it has not found such instructions to violate due process.... Likewise, the jury instructions given here, while problematic, did not unconstitutionally lower the State's burden of proof."); *Beverly v. Walker,* 118 F.3d 900, 903 (2d Cir.1997); *Mason v. Schriver,* 14 F.Supp.2d at 330. Indeed, New York State courts have long approved of such language.[12]

In analyzing an allegedly erroneous reasonable doubt jury charge, the Second Circuit has emphasized that a court must view the instruction in light of the charge as a whole to determine whether there has been a constitutional violation. *See, e.g., Pinto v. Stinson,* 1997 WL 664866 at *1; *Beverly v. Walker,* 118 F.3d at 903–04 (upholding "doubt for which you can give a reason" instruction in context of entire charge); *Vargas v. Keane,* 86 F.3d 1273, 1277–78 (2d Cir.) (upholding jury instruction that defined reasonable doubt as " 'doubt for which you can give a reason,' " when viewed in light of the charge as a whole), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (1996); *Chalmers v. Mitchell,* 73 F.3d at 1268; *Barber*

*v. Scully,* 557 F.Supp. at 1296 (upholding a similar charge); *Mason v. Schriver,* 14 F.Supp.2d 321, 330–31. "[W]here the jury instructions taken as a whole clearly instruct that the burden is on the government and that the defendant is never required to prove his innocence, the charge as a whole will not be held to be erroneous." *Mason v. Schriver,* 14 F.Supp.2d at 330 (citing *Vargas, Chalmers & Davis* ).

Here, as in those cases, the trial court's entire charge made clear that Lugo was not required to prove his innocence and that the burden rested on the State. For example, the trial judge instructed the jurors that the "People must prove guilt beyond a reasonable doubt and that is the highest standard of proof known to the law." (Tr. 3016.) The trial court also warned that a doubt, to be reasonable, must not be based "upon a whim or a guess or a feeling that a juror may have that's unconnected to the evidence in the case." (Tr. 3017.) The jury was told to "[r]eview the evidence ... and, if after doing so you find that the People have not proven defendant's guilt beyond a reasonable doubt, then find the defendant not guilty." (Tr. 3018.) Taken in light of the entire jury instructions, the "challenged language did not raise the quantum of doubt necessary for acquittal or shift the burden of proof away from the prosecution." *Vargas v. Keane,* 86 F.3d at 1277; *see also, e.g., Mason v. Schriver,* 14 F.Supp.2d at 330–31. Accordingly, the reasonable doubt charge did not constitute constitutional error sufficient to justify habeas relief.

---

**12.** For example, in *People v. Antommarchi,* the New York Court of Appeals upheld a jury instruction which defined a reasonable doubt as "a doubt based upon reason. It is a doubt for which a juror can give a reason if he or she is called upon to do so in the jury room." *People v. Antommarchi,* 80 N.Y.2d 247, 251, 590 N.Y.S.2d 33, 35, 604 N.E.2d 95 (1992). The New York Court of Appeals explained: [I]t is not surprising, nor improper, for a court to instruct the jury that a reasonable doubt is one for which a reason can be

given, nor to augment that definition with an explanation that the doubt should be sufficiently clear so that the juror would be capable of giving a reason for his or her views.... Consequently, for over 100 years we have approved language defining a reasonable doubt as one which a juror could, if called upon to do so, express or articulate. *Id.* at 252, 590 N.Y.S.2d at 36, 604 N.E.2d 95 (citing N.Y. cases); *see also, e.g., Mason v. Schriver,* 14 F.Supp.2d at 330–31 n. 7.

## V. *THE PROSECUTOR'S REMARKS WERE NOT SO EGREGIOUS AS TO VIOLATE DUE PROCESS*

Lugo's third habeas claim alleges that he was "deprived of his right to a fair trial by scandalous and violative remarks by the prosecutor ..." (Pet.¶ 12(C).) Specifically, Lugo claims that in her summation, the prosecutor made inappropriate remarks about drug dealers (Tr. 2824–25), and shifted the burden of proof to the defendant by insinuating that Lugo should have produced more witnesses (Tr. 2826). (*See* Pet. ¶ 12(C); Lugo Br. at 26.)

While Lugo groups this claim and the claim regarding the admission of Colon's pregnancy together in a single ground in his petition (Pet.¶ 12(C)), the prosecutorial misconduct claim is not procedurally barred. Lugo fairly presented his federal claim in state court merely by asserting prosecutorial misconduct. The Second Circuit holds that "the claim of prosecutorial misconduct ha[s] sufficiently familiar federal constitutional implications to be within the mainstream of constitutional litigation," thereby satisfying *Daye's* fourth prong. *Garofolo v. Coomb*, 804 F.2d 201, 205 (2d Cir.1986); *accord, e.g., Connolly v. Artuz*, No. 93 CV 4470, 1995 WL 561343 at *2 (E.D.N.Y. Sept.15, 1995); *Washington v. Walker*, 89 Civ. 7841, 1994 WL 391947 at *5 n. 1 (S.D.N.Y. July 28, 1994); *Saunders v. Riley*, 90 Civ. 4738, 1991 WL 95352 at *5 (S.D.N.Y. May 30, 1991). Lugo's prosecutorial misconduct claim is therefore ripe for review on the merits.

Prosecutorial misconduct violates a defendant's due process rights only when it is of " ' "sufficient significance to result in the denial of the defendant's right to a fair trial." ' " *Greer v. Miller*, 483 U.S. 756, 765, 107 S.Ct. 3102, 3109, 97 L.Ed.2d 618 (1987); *accord, e.g., United States v. McCarthy*, 54 F.3d 51, 55 (2d Cir.), *cert. denied*, 516 U.S. 880, 116 S.Ct. 214, 133 L.Ed.2d 145 (1995); *Blissett v. Lefevre*, 924 F.2d 434, 440 (2d Cir.), *cert. denied*, 502 U.S. 852, 112 S.Ct. 158, 116 L.Ed.2d 123 (1991); *Readdon v. Senkowski*, 96 Civ. 4722, 1998 WL 720682 at *4 (S.D.N.Y. Oct.13, 1998); *Hurd v. Keane*, 97 Civ. 2991, 1997 WL 582825 at *4 (S.D.N.Y. Sept.19, 1997); *Beverly v. Walker*, 899 F.Supp. 900, 911 (N.D.N.Y.1995), *aff'd*, 118 F.3d 900 (2d Cir.1997); *Washington v. Walker*, 1994 WL 391947 at *3 ("Even where a prosecutor's remarks are improper, 'constitutional error occurs only when the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair' ") (quoting *Floyd v. Meachum*, 907 F.2d 347, 355 (2d Cir.1990) (quoting *Garofolo v. Coomb*, 804 F.2d at 206)); *Martin v. Scully*, 748 F.Supp. 159, 166 (S.D.N.Y.1990) (Patterson, D.J. & Grubin, M.J.). Stated another way, "the law is settled that 'federal habeas relief is not available on the basis of improper prosecutorial statements at trial unless the errors, in context of the summation as a whole, were so fundamentally unfair as to deny petitioner a fair trial.' " *Tejeda v. Senkowski*, 92 Civ. 3012, 1993 WL 213036 at *3 (S.D.N.Y. June 16, 1993), *aff'd mem.*, 23 F.3d 397 (2d Cir.), *cert. denied*, 513 U.S. 887, 115 S.Ct. 230, 130 L.Ed.2d 155 (1994); *accord, Franza v. Stinson*, 58 F.Supp.2d 124, 149 (S.D.N.Y. 1999) (Kaplan, D.J. & Peck, M.J.); *see also, e.g., Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974); *Fox v. Mann*, 71 F.3d 66, 72 (2d Cir.1995); *Floyd v. Meachum*, 907 F.2d 347, 355 (2d Cir.1990) (quoting *Garofolo v. Coomb*, 804 F.2d 201, 205 (2d Cir.1986)); *Edmonds v. McGinnis*, 11 F.Supp.2d 427, 437 (S.D.N.Y.1998); *Gaiter v. Lord*, 917 F.Supp. 145, 153 (E.D.N.Y. 1996); *Jones v. Kuhlmann*, 93 Civ. 5963, 1995 WL 733649 at *4 (S.D.N.Y. Dec.12, 1995).

To properly evaluate the prosecution's actions, the alleged misdeeds must be placed in context, and "[t]he severity of the misconduct, curative measures, and the certainty of conviction absent the misconduct are all relevant to the inquiry." *Blis-*

368

sett v. Lefevre, 924 F.2d at 440; accord, e.g., Greer v. Miller, 483 U.S. at 766, 107 S.Ct. at 3109 ("it is important 'as an initial matter to place th[e] remar[k] in context' "); United States v. McCarthy, 54 F.3d at 55; United States v. Friedman, 909 F.2d 705, 709 (2d Cir.1990); United States v. Biasucci, 786 F.2d 504, 514 (2d Cir.), cert. denied, 479 U.S. 827, 107 S.Ct. 104, 93 L.Ed.2d 54 (1986); Hurd v. Keane, 1997 WL 582825 at *4; Beverly v. Walker, 899 F.Supp. at 911.

 The prosecutor's summation remarks here fall far short of a constitutional violation. First, Lugo complains that he was prejudiced by the prosecutor's repeated references to drugs and the victims as "drug dealers." However, in making these comments, the prosecutor was simply stressing that, despite the victims' involvement in the drug trade, they deserved a "cool, calm evaluation of the evidence." (Tr. 2825.) The allegedly prejudicial comments such as "wild-west" and "when bullets fly, people die" were calculated to emphasize the gravity of the crime, and to stress Lugo's depraved indifference. " '[A] prosecutor is not precluded from vigorous advocacy, or the use of colorful adjectives, in summation.' " United States v. Jaswal, 47 F.3d 539, 544 (2d Cir.1995); see also, e.g., Franza v. Stinson, 1999 WL 495902 at *23.

Therefore, based on the lack of severity of the alleged misconduct and the strong evidence of Lugo's guilt, these remarks did not prejudice Lugo. See, e.g., Bentley v. Scully, 41 F.3d 818, 825 (2d Cir.1994) (denying prosecutorial misconduct claim where prosecution presented "compelling evidence" against petitioner and alleged misconduct was both brief and isolated), cert. denied, 516 U.S. 1152, 116 S.Ct. 1029, 134 L.Ed.2d 107 (1996); Strouse v. Leonardo, 928 F.2d 548, 557 (2d Cir.1991) (no violation where "cumulative effect of the prosecutor's alleged misconduct was not so severe as to amount to the denial of a fair trial" and, absent the misconduct, overwhelming evidence existed against peti-

tioner); Bradley v. Meachum, 918 F.2d 338, 343 (2d Cir.1990) ("clear evidence of guilt demonstrates that [petitioner] was not prejudiced by the prosecutor's improper remarks"), cert. denied, 501 U.S. 1221, 111 S.Ct. 2835, 115 L.Ed.2d 1004 (1991); United States v. Parker, 903 F.2d 91, 98–99 (2d Cir.) (even where prosecutor acted improperly, no claim for misconduct where "transgression was isolated, the trial court took swift and clear steps to correct the implication of the [improper] argument, and the evidence against the defendant was strong"), cert. denied, 498 U.S. 872, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990); United States v. Modica, 663 F.2d 1173, 1181 (2d Cir.1981) (per curiam) ("Often, the existence of substantial prejudice turns upon the strength of the government's case: if proof of guilt is strong, then the prejudicial effect of the [prosecutor's] comments tends to be deemed insubstantial ..."), cert. denied, 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982); Romer v. Keane, 94 Civ. 4980, 1995 WL 758727 at *6 (S.D.N.Y. Dec.22, 1995) ("any prosecutorial misconduct ... was cured by the overwhelming evidence of petitioner's guilt"); Magnotta v. Berry, 906 F.Supp. 907, 926 (S.D.N.Y.1995) (no constitutional violation based on alleged prosecutor misconduct where "petitioner almost certainly would have been convicted absent the improper conduct"); Martin v. Scully, 748 F.Supp. at 167 (holding that "the subsequent remarks of the prosecutor about which petitioner complains were certainly within the range of rhetorical comment permissible during closing argument and did not deprive petitioner of a fair trial"); see also, e.g., United States v. Rivera, 971 F.2d 876, 885 (2d Cir.1992); Gonzalez v. Sullivan, 934 F.2d 419, 424 (2d Cir.1991) (although prosecutor made improper statements during summation, no prejudice to defendant where trial court sustained defense objections and instructed jury that the summations were not evidence and the case against defendant was strong); United States v. Coffey, 823 F.2d at 28 (no constitutional violation where alleged misconduct

was isolated and not intentional, the trial court provided curative instructions and trial evidence demonstrated defendant's guilt).

■ Lugo's second prosecutorial misconduct claim, alleging that the prosecutor's comments shifted the burden of proof to him, also lacks merit. (*See* Pet. ¶ 12(C); Lugo Br. at 26.) Lugo claims that the prosecutor's statement in her summation that "when Manuel Lugo ordered the hit, when Manuel Lugo told Faze to go upstairs and get his gun, that is the person who picks the witnesses. That's the person who dictates who will come to court and testify" (Tr. 2826), implied that Lugo had an affirmative obligation to produce witnesses, thus shifting the burden of proof. (Pet.¶ 12(C)); (Lugo Br. at 26.) However, this remark did nothing to imply that Lugo needed to present witnesses. Instead, it is clear that the prosecutor was stating that, by ordering the victims' murders, Lugo had chosen who would be around to witness the crime, *i.e.*, explaining why the prosecution's witnesses were drug dealers.

Even if the prosecutor's remarks were improper, they caused no prejudice to Lugo since the trial court made clear to the jury that the prosecution had the burden of proof. (*See* pages 7–9 above, extensively quoting the jury charge.) The trial judge instructed the jurors that the "People must prove guilt beyond a reasonable doubt and that is the highest standard of proof known to the law." (Tr. 3016.) The jury was told to "[r]eview the evidence ... and, if after doing so you find that the People have not proven defendant's guilt beyond a reasonable doubt, then find the defendant not guilty." (Tr. 3018.) The judge also told the jury that "[n]o defendant is required to prove his innocence." (Tr. 3014.) Therefore, the prosecutor's remark did not deny Lugo a fair trial. *See, e.g., United States v. Mapp*, 170 F.3d 328, 337–38 (2d Cir.1999) (prosecutor's summation that arguably "impermissibly suggest[ed] ... that [defendant] has any bur-

den of proof" not reversible error because any prejudice was eliminated by court's instructions); *United States v. Millar*, 79 F.3d 338, 344 (2d Cir.1996) (court's instruction on burden of proof cured any error in prosecutor's summation); *United States v. Bautista*, 23 F.3d 726, 733 (2d Cir.) ("It is established that the government may comment on a defendant's failure to call witnesses to support his factual theories . . . . Further, whatever ambiguity may have been caused by the remark with respect to the burden of proof was undoubtedly clarified by the district court's instruction that the government bore the burden of proof as to every element and that the burden never shifted to the defendants."), *cert. denied*, 513 U.S. 862, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994); *United States v. Rivera*, 971 F.2d at 884–85 (no error for prosecutor to comment in summation on a "defendant's failure to call witnesses to support his arguments" or failure to cross-examine a witness about a subject; court's instructions to jury obviated any prosecutorial error); *United States v. Walker*, 835 F.2d 983, 988 (2d Cir.1987); *Garofolo v. Coomb*, 804 F.2d at 206 ("This is not to say that the prosecutor's remarks were proper or appropriate; they were not, but curative instructions were given by the trial judge."); *Fagon v. Bara*, 717 F.Supp. 976, 987 n. 10 (E.D.N.Y.1989) ("Juries are presumed to follow a court's curative instructions") (citations omitted); *Sutton v. Herbert*, 39 F.Supp.2d 335, 1999 WL 65699 at *4 (S.D.N.Y.1999) (prosecutor's comments during summation, that only the petitioner and no witnesses testified that petitioner suffered injuries, was a fair assessment of the evidence and did not shift burden of proof, since "[c]ommenting on the evidence presented at trial is a typical—indeed necessary—part of any summation, and is not error"); *Duncan v. Griener*, No. 97 Civ. 8754, 1999 WL 20890 at *10 (S.D.N.Y. Jan.19, 1999); *McEachin v. Ross*, 951 F.Supp. 478, 482–83 (S.D.N.Y.1997); *Reeves v. Keane*, 92 Civ. 2499, 1993 WL 147538 at *7–8 (S.D.N.Y. May 5, 1993), *aff'd mem.*, 23

F.3d 396 (2d Cir.), *cert. denied,* 512 U.S. 1241, 114 S.Ct. 2752, 129 L.Ed.2d 869 (1994); *Partee v. Henderson,* 87 Civ. 1688, 1990 WL 26917 at *11 (S.D.N.Y. Feb.28, 1990); *Arce v. Smith,* 710 F.Supp. 920, 926–27 & n. 2 (S.D.N.Y.), *aff'd,* 889 F.2d 1271 (2d Cir.1989), *cert. denied,* 495 U.S. 937, 110 S.Ct. 2185, 109 L.Ed.2d 513 (1990).

Accordingly, the petition should be denied as to this ground.

## VI. *LUGO'S APPELLATE COUNSEL WAS NOT INEFFECTIVE UNDER THE STRICKLAND V. WASHINGTON TEST*

### A. *The Strickland v. Washington Standard*

 The Supreme Court has announced a two-part test to determine if counsel's assistance was ineffective. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* This performance is to be judged by an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. at 2064.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.... [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances,

the challenged action "might be considered sound trial strategy."

*Id.* 466 U.S. at 689, 104 S.Ct. at 2065; *accord, e.g., Franza v. Stinson,* 58 F.Supp.2d 124, 132 (S.D.N.Y. 1999) (Kaplan, D.J. & Peck, M.J.); *Torres v. Irvin,* 33 F.Supp.2d 257, 277 (S.D.N.Y.1998) (Cote, D.J. & Peck, M.J.).

 Second, the defendant must show prejudice from counsel's performance. *Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. at 2064. The "question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. at 2068–69. Put another way, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Id.* 466 U.S. at 695–96, 104 S.Ct. at 2069 (emphasis added); *see also, e.g., Valenti v. United States,* No. 96–2102, 101 F.2d 1392, 1996 WL 387213 *1 (2d Cir. July 11, 1996)

("This Court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, bearing in mind that there are countless ways to provide effective assistance in any case and that even the best criminal defense attorneys would not defend a particular client in the same way.' "); *DeLuca v. Lord*, 77 F.3d 578, 584 , (2d Cir.), *cert. denied*, 519 U.S. 824, 117 S.Ct. 83, 136 L.Ed.2d 40 (1996); *Franza v. Stinson*, 58 F.Supp.2d 124, 134; *Torres v. Irvin*, 33 F.Supp.2d at 277; *Brown v. United States*, 97 Civ. 1880, 1998 WL 30273 *3 (S.D.N.Y. Jan.28, 1998) (Patterson, D.J.).

The Supreme Court has counseled that these principles "do not establish mechanical rules." *Strickland v. Washington*, 466 U.S. at 696, 104 S.Ct. at 2069. The focus of the inquiry should be on the fundamental fairness of the trial and whether, despite the strong presumption of reliability, the result is unreliable because of a breakdown of the adversarial process. *Id.* The Supreme Court also made clear that "there is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 697, 104 S.Ct. at 2069; *accord, e.g., Franza v. Stinson*, at 134; *Torres v. Irvin*, 33 F.Supp.2d at 277.

In addition, the Supreme Court also has counseled that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland v. Washington*, 466 U.S. at 690–91, 104 S.Ct. at 2066; *see also e.g., Engle v. Isaac*, 456 U.S. 107, 134, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1982) ("We have long recognized ... that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim."); *Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir.1998) ("In reviewing *Strickland* claims, courts are instructed to 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and that counsel's conduct was not the result of error but derived instead from trial strategy. We are also instructed, when reviewing decisions by counsel, not to 'second-guess reasonable professional judgments and impose on ... counsel a duty to raise very "colorable" claim' on appeal.") (citations omitted); *Valenti v. United States*, No. 96–2102, 101 F.2d 1392, 1996 WL 387213 *1 (2d Cir. July 11, 1996) ("This Court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, bearing in mind that there are countless ways to provide effective assistance in any case and that even the best criminal defense attorneys would not defend a particular client in the same way.' "); *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.) (a reviewing court "may not use hindsight to second-guess [counsel's] strategy choices."), *cert. denied*, 513 U.S. 820, 115 S.Ct. 81, 130 L.Ed.2d 35 (1994); *Franza v. Stinson*, at 134.

The *Strickland* test applies to appellate as well as trial counsel. *See, e.g., Mayo v. Henderson*, 13 F.3d at 533; *Franza v. Stinson*, 1999 WL 495902 at *9; *Torres v. Irvin*, 33 F.Supp.2d at 277; *Hurd v. Keane*, 97 Civ. 2991, 1997 WL 582825 at *2 (S.D.N.Y. Sept.19, 1997); *Ehinger v. Miller*, 942 F.Supp. 925, 932 (S.D.N.Y.1996) (Mukasey, D.J. & Peck, M.J.); *Benn v. Stinson*, 917 F.Supp. 202, 205 (S.D.N.Y.1995) (Stein, D.J. & Peck, M.J.).

Appellate counsel is not required to raise every colorable claim urged by the client, but is entitled to focus on key issues while winnowing out weaker arguments. *E.g., Jones v. Barnes*, 463 U.S. 745, 751–53, 103 S.Ct. 3308, 3312–13,

77 L.Ed.2d 987 (1983); *Jackson v. Leonardo*, 162 F.3d at 85; *Mayo v. Henderson*, 13 F.3d at 533; *Franza v. Stinson*, at 135; *Torres v. Irvin*, 33 F.Supp.2d at 278; *Hurd v. Keane*, 1997 WL 582825 at *2; *Ehinger v. Miller*, 942 F.Supp. at 932; *Benn v. Stinson*, 917 F.Supp. at 206. Further, reviewing courts should not second guess the reasonable professional judgments of appellate counsel as to the most promising appeal issues. *E.g., Jones v. Barnes*, 463 U.S. at 754, 103 S.Ct. at 3314; *Tsirizotakis v. LeFevre*, 736 F.2d 57, 65 (2d Cir.), *cert. denied*, 469 U.S. 869, 105 S.Ct. 216, 83 L.Ed.2d 146 (1984); *Franza v. Stinson*, at 135; *Torres v. Irvin*, 33 F.Supp.2d at 278; *Ehinger v. Miller*, 942 F.Supp. at 932; *Benn v. Stinson*, 917 F.Supp. at 206.

■ Thus, a petitioner may establish constitutionally inadequate performance only by showing that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d at 533; *see also, e.g., Jackson v. Leonardo*, 162 F.3d at 85; *Franza v. Stinson*, at 135; *Torres v. Irvin*, 33 F.Supp.2d at 278; *Hurd v. Keane*, 1997 WL 582825 at *2; *Ehinger v. Miller*, 942 F.Supp. at 932; *Benn v. Stinson*, 917 F.Supp. at 206.

### B. *Application of the Strickland Standard to Lugo's Ineffective Assistance of Appellate Counsel Claims*

#### 1. *Appellate Counsel's Failure to Challenge the Trial Court's Jury Charge*

Lugo argues that appellate counsel should have raised "significant and obvious constitutional and statutory issues in [Lugo's] first and direct appeal" (Pet. ¶ 12(D)(1)), but he does not articulate the issues which he believes counsel failed to raise. Since the Court must liberally construe pro se petitions, the Court assumes that Lugo is advancing an argument buried deep in this section of his brief, that his appellate counsel was ineffective for failing to argue on appeal that the trial court's accessorial liability charge and supplemental depraved indifference murder charge were erroneous. (Lugo Br. at 35–39.) This argument is frivolous.

In her brief to the First Department, Lugo's appellate counsel argued that the depraved indifference murder charge was erroneous: "[the trial judge] gave the jury an over-simplified cause and effect and did not properly instruct them upon the individualized responsibility that is implicit in our law." (Swiger Aff.Ex. 1: Lugo 1st Dept' Br. at 16.) [13] Therefore, Lugo's appellate counsel actually raised this claim (albeit in a portion of her brief challenging the sufficiency of the evidence of Lugo's accessorial liability for Colon's murder).

■ Lugo's ineffective assistance claim regarding the accessorial liability charge lacks merit for two additional reasons. First, Lugo's appellate attorney could not have raised this claim on direct appeal because it was unpreserved for appellate review. A review of the trial transcript does not reveal an objection by Lugo's trial counsel to the original jury instructions at trial. (Tr. 3056–57.) "Under New York law, a defendant must ob-

---

**13.** Upon receipt of the brief, Lugo wrote appellate counsel that he "deliberately took [his] time to read and consider the content," and that "[t]o say the least, [he was] impressed with the issues raised. . . ." (Swiger Aff.Ex. 5: Lugo Coram Nobis papers Ex. B: 2/7/96 Letter from Lugo to Stewart.) Lugo's concurrence with appellate counsel's arguments strongly undercuts his habeas ineffective assistance claims. *See, e.g., Dean v. Superintendent, Clinton Correctional Facility*, 93 F.3d 58, 62 (2d Cir.1996) (petitioner claiming ineffective assistance of counsel based on counsel's pursuit of a particular defense over defendant's objection "bears the burden of showing that he in fact objected"; if no objection is stated on the record, petitioner "must show not only that he 'disagreed' with counsel, but that his 'will was "overborne" by his counsel'"), *cert. denied*, 519 U.S. 1129, 117 S.Ct. 987, 136 L.Ed.2d 868 (1997); *Rodriguez v. Hanslmaier*, 982 F.Supp. 279, 286–87 (S.D.N.Y.1997) (Sprizzo, D.J. & Peck, M.J.) (citing cases).

ject to an alleged error in a jury instruction before the trial court in order to preserve the issue for appeal." *Reyes v. Keane,* 118 F.3d 136, 138 (2d Cir.1997) (citing CPL § 470.05(2));[14] *see also, e.g., Liner v. Keane,* 95 Civ. 2738, 1996 WL 33990 at *7 (S.D.N.Y. Jan.3, 1996) (Wood, D.J. & Peck, M.J.) ("New York law requires a party to object to the court's jury charge in order to preserve the issue for appellate review."); *Camarano v. Irvin,* 902 F.Supp. at 366 n. 3; *People v. Cadorette,* 56 N.Y.2d 1007, 1009, 453 N.Y.S.2d 638, 638, 439 N.E.2d 353 (1982) ("[D]efendant's other contention regarding alleged errors in the trial court's charge to the jury has not been preserved for our review insofar as no exception to the charge was taken at trial."); *People v. Holzer,* 52 N.Y.2d 947, 948, 437 N.Y.S.2d 964, 964, 419 N.E.2d 867 (1981) ("In consequence of the failure of her counsel either to make a request for the desired charge or to except to the court's failure so to charge the issue has not been preserved for our review."); *People v. Flecha,* 161 A.D.2d 116, 116, 554 N.Y.S.2d 845, 845 (1st Dep't 1990) ("Defendant now claims on appeal that he was denied a fair trial by the court's ... [jury] charge. However, since these objections were not raised at trial, they are unpreserved for appellate review."). Thus, it is clear that because Lugo's trial counsel did not lodge a timely objection to the original accessorial liability jury instructions at trial, the claim was unpreserved for appellate review. Therefore, because his attorney could not have raised this claim in the First Department, his attorney was not ineffective for failing to do so.

▋ Second, both the original charge on accessorial liability and depraved indifference, and the supplemental charge (to which trial counsel had objected, *see* Tr. 3094), were proper. The court read the statutory definition of accessorial conduct, Penal Law § 20.00, and further instructed the jury that "[a]ll persons who intentionally participate in the commission of a crime were accomplices of one another and, therefore, are legally guilty of that crime." (Tr.2021.) This properly instructed the jury as to the elements of accessorial liability. *See, e.g., People v. Lilly,* 139 A.D.2d 671, 672, 527 N.Y.S.2d 433, 434 (2d Dep't 1988) (finding that the trial court's jury instruction was proper when "the court read the statutory definition of accessorial liability to the jury and explained that a participant must act knowingly and with the intent to commit the crime"); *People v. Newton,* 120 A.D.2d 751, 751, 503 N.Y.S.2d 250, 251 (2d Dep't 1986) (finding that "the court's charge was not as a matter of law erroneous, because it did mention the element of mental culpability by reading the statutory definition ... and mentioned that the conduct must be intentional and knowing.") (citations omitted); *People v. Graham,* 122 A.D.2d 162, 162, 504 N.Y.S.2d 705, 706 (2d Dep't 1986) (finding that "any error in the court's charge, which did include a reading of the statutory provision delineating the elements of accessorial liability ... as well as detailed definitions of the requisite mental states for the crimes charged, was harmless...."); *Godfrey v. Irvin,* 871 F.Supp. 577, 582 (W.D.N.Y.1994) ("The judge repeated the statutory language several times, either reading verbatim or paraphrasing....").

▋ Lugo's claim regarding the trial court's supplemental depraved indifference murder charge is also without merit. In order to constitute reversible error, the trial court's instruction must have " 'by

**14.** N.Y.CPL § 470.05(2) provides, in relevant part:

For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.

itself so infected the entire trial that the resulting conviction violates due process.'" *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1737, 52 L.Ed.2d 203 (1977) (quoting *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)). The trial court's supplemental jury charge, viewed as a whole "in the context of the entire charge" was not, as a matter of law, erroneous. *Bramble v. Smith,* 96 Civ. 5905, 1998 WL 395265 *17 (S.D.N.Y. July 15, 1998). Even if the supplemental charge was erroneous, in light of the correct original charge and the compelling evidence of Lugo's guilt, there is no indication that the instruction so infected the entire proceeding as to result in a denial of due process.

Therefore, Lugo's appellate counsel was not ineffective for failing to raise these claims.

### 2. *Appellate Counsel's Failure to Provide the Full Trial Record to Petitioner*

■ Lugo further argues that his appellate counsel was ineffective for failing to "take notice and correct a deficient appellate record." (Pet.¶ 12(D)(2).) Specifically, Lugo argues that his mother attempted to acquire a copy of the trial transcript and was "informed by counsel's secretary that they never had the Opening [sic] instructions and Statements [sic] of various witnesses at trial." (Lugo Br. at 41.) These claims are entirely unsubstantiated and without merit.

Lugo's appellate counsel was co-defendant Roman's trial counsel, and as such received "daily cop[ies] of the trial minutes." (State Br. at 47–48.) Indeed, when the State was unable to locate its copy of the trial transcript in order to respond to Lugo's pro se coram nobis application, the State was given a full copy by Lugo's appellate counsel. (State Br. at 48; Swiger Aff.Ex. 6: ADA Marsh Aff. ¶¶ 29–32.)

Thus, Lugo's appellate counsel clearly was in possession of the entire trial transcript. Even assuming that counsel did not have the entire transcript, Lugo fails to assert what deficiencies counsel should have noticed and corrected. *See, e.g., Santiago v. Coughlin,* No. 96–2229, 107 F.3d 4 (table), 1997 WL 32924 *1 (2d Cir.1997) (petitioner "'must show prejudice resulting from the missing or incomplete transcript'") (quoting *Godfrey v. Irvin,* 871 F.Supp. at 584); *Bransford v. Brown,* 806 F.2d 83, 85–86 (6th Cir.1986), *cert. denied,* 481 U.S. 1056, 107 S.Ct. 2198, 95 L.Ed.2d 853 (1987). In any event, the Court has read Lugo's trial transcript and found no issues of constitutional dimension.

Accordingly, Lugo's petition should be denied as to this ground.

### 3. *Appellate Counsel's Failure to Investigate New Evidence*

■ Lugo also claims that appellate counsel "failed to pursue post-judgment discovery of evidence that was made known to her that another person committed the crime charged to petitioner." (Pet. ¶ 2(D)(3).) Lugo argues that someone other than Roman was willing to admit to the shooting, that the information was from "reliable sources," and that counsel failed to "investigate and develop" this "newly discovered evidence." (Lugo Br. at 42.)

■ New York law provides that claims based on new evidence can be raised in a motion to vacate the judgment pursuant to CPL § 440.10(1)(g). A § 440.10 motion is the proper procedural vehicle for raising a new evidence claim, since the appellate court is unable to consider the merits of such a claim without an adequate record of the relevant facts. *See, e.g., People v. Mosca,* 517 N.Y.S.2d 33, 131 A.D.2d 704 (2d Dep't 1987) (newly discovered evidence claims "involve matters dehors the record and may not be considered by this court on direct appeal from the judgment"); *People v. Roberts,* 89 A.D.2d 912, 912, 453 N.Y.S.2d 727, 727 (2d Dep't 1982) ("Since allegations raised on this issue ... involve matters dehors the record, they may not be considered by this court

on the appeal from the judgment of conviction. . . . However, defendant may address such issues in an application to the [trial] Court to vacate the judgments of conviction pursuant to CPL 440.10"); *People v. Rene*, 223 A.D.2d 733, 733, 637 N.Y.S.2d 453, 454 (2d Dep't) ("The defendant's contention that . . . rests on matters outside the record . . . is improperly presented on direct appeal."), *appeal denied*, 87 N.Y.2d 1024, 644 N.Y.S.2d 157, 666 N.E.2d 1071 (1996); *People v. Smith*, 206 A.D.2d 102, 113, 618 N.Y.S.2d 649, 656 (1st Dep't 1994) (since materials were not before the trial court, "they are not a part of the record on appeal, and may not be considered by this Court"), *aff'd*, 85 N.Y.2d 1016, 1018, 1019, 1020, 630 N.Y.S.2d 971, 631 N.Y.S.2d 280, 281 (1995); *People v. Dudley*, 201 A.D.2d 664, 664, 609 N.Y.S.2d 823, 824 (2d Dep't), *appeal denied*, 83 N.Y.2d 871, 877, 613 N.Y.S.2d 132, 137, 635 N.E.2d 301 (1994); *People v. Brown*, 192 A.D.2d 666, 666, 598 N.Y.S.2d 717, 717 (2d Dep't) ("Since this claim rests on matters which are not contained in the record, its presentation on direct appeal is improper."), *appeal denied*, 81 N.Y.2d 1070, 601 N.Y.S.2d 590, 619 N.E.2d 668 (1993); *People v. Noland*, 189 A.D.2d 829, 829, 592 N.Y.S.2d 465, 465 (2d Dep't) ("Since this claim rests on matters which are not contained in the record, its presentation in direct appeal is improper."), *appeal denied*, 81 N.Y.2d 890, 597 N.Y.S.2d 952, 613 N.E.2d 984 (1993); *People v. Letizia*, 155 A.D.2d 952, 952, 547 N.Y.S.2d 767, 768 (4th Dep't 1989) (" 'Since the conduct which is claimed to be improper and prejudicial does not appear in the record, the issue may [not be raised on direct appeal but may] be raised in a proceeding under CPL Article 440.' ") (quoting *People v. Cleveland*, 132 A.D.2d 921, 921, 518 N.Y.S.2d 477, 477–78 (4th Dep't), *appeal denied*, 70 N.Y.2d 749, 520 N.Y.S.2d 1025, 514 N.E.2d 1377 (1987)), *appeal denied*, 75 N.Y.2d 814, 552 N.Y.S.2d 565, 551 N.E.2d 1243 (1990), *cert. denied*, 498 U.S. 826, 111 S.Ct. 81, 112 L.Ed.2d 54 (1990). Therefore, it would have been futile for Lugo's appellate counsel to have raised this claim on direct appeal.

Finally, while Lugo was entitled to counsel on direct appeal, he had no constitutional right to counsel for a state collateral attack. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 756–57, 111 S.Ct. 2546, 2568, 115 L.Ed.2d 640 (1991) ("In *Ross v. Moffitt* . . . and *Pennsylvania v. Finley* . . . we declined to extend the right to counsel beyond the first appeal of a criminal conviction. . . . Given that a criminal defendant has no right to counsel beyond his first appeal in pursuing state discretionary or collateral review, it would defy logic for us to hold that [petitioner] had a right to counsel to appeal a state collateral determination of his claims of trial error."); *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987) ("We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions, . . . and we decline to so hold today. Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals."); *Evitts v. Lucey*, 469 U.S. 387, 394, 105 S.Ct. 830, 834–35, 83 L.Ed.2d 821 (1985) ("This right to counsel is limited to the first appeal as of right," citing *Ross v. Moffitt*); *Wainwright v. Torna*, 455 U.S. 586, 587, 102 S.Ct. 1300, 1301, 71 L.Ed.2d 475 (1982) (Since "a criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals . . . , he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the application [for leave to appeal to the highest state court] timely."); *Ross v. Moffitt*, 417 U.S. 600, 610–15, 94 S.Ct. 2437, 2444–46, 41 L.Ed.2d 341 (1974); *United States ex rel. Cadogan v. LaVallee*, 502 F.2d 824, 827 (2d Cir.1974); *Veras v. Strack*, 98 Civ. 7610, slip op. at 8–14 (S.D.N.Y. March 15, 1999) (Peck, M.J.).

Thus Lugo's counsel cannot be ineffective for failing to bring a CPL § 440.10 collateral attack on the ground of newly discovered evidence.[15] *See, e.g.,* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during federal or state post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.") [16]

## CONCLUSION

For the reasons set forth above, Lugo's habeas corpus petition should be denied as procedurally barred in part and altogether without merit.

15. In his brief, Lugo also asserts that he "was denied a full and direct appeal on addressing the claim of ineffective assistance of appellate counsel." (Lugo Br. at 44.) This claim is both misplaced and frivolous. The order of the First Department denying Lugo's application for a writ of error coram nobis is not appealable under CPL § 450.90(1). Furthermore, " 'federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings.' " *Franza v. Stinson,* 1999 WL 495902 at *26 (citing cases). Moreover, the Court does not see how the state court's actions could give rise to an ineffective assistance claim here.

16. *See also, e.g., Coleman v. Thompson,* 501 U.S. at 757, 111 S.Ct. at 2568 ("Because Coleman had no right to counsel to pursue his appeal in state habeas, any attorney error that led to the default of Coleman's claims in state court cannot constitute cause to excuse the default in federal habeas."); *Evitts v. Lucey,* 469 U.S. at 396 n. 7, 105 S.Ct. at 836 n. 7 ("the right to effective assistance of counsel is dependent on the right to counsel itself," citing *Wainwright v. Torna* ); *Wainwright v. Torna,* 455 U.S. at 587–88, 102 S.Ct. at 1301 ("Since respondent had no constitutional right to counsel [for his discretionary appeal to the state's highest appellate court], he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the application timely."); *Gomez v. State of New Mexico,* No. 89–2004, 937 F.2d 616 (table), 1991 WL 132445 at *1 (10th Cir. July 15, 1991), *cert. denied,* 502 U.S. 1076, 112 S.Ct. 977, 117 L.Ed.2d 141 (1992); *Buelow v. Dickey,* 847 F.2d 420, 426 (7th Cir. 1988) ('there is no constitutional right to counsel to pursue discretionary state appeals."), *cert. denied,* 489 U.S. 1032, 109 S.Ct. 1168, 103 L.Ed.2d 227 (1989); *Hence v. Smith,* 37 F.Supp.2d 970, 979 (E.D.Mich. 1999) ("Because petitioner had no constitutional right to the assistance of counsel in his post-conviction proceedings, his claim that his attorney was ineffective in representing him in his post-conviction motion and appeal in Michigan does not entitle him to [federal habeas] relief from this Court."); *Jackson v. Cambra,* No. C 97–3020, 1998 WL 917537 at *6 (N.D.Cal. Dec.30, 1998); *United States ex rel. O'Banner v. Hartwig,* No. 96 C 2062, 1996 WL 680237 at *4 (N.D.Ill. Nov.21, 1996) ("There is no constitutional right to counsel in discretionary appeals.... Furthermore, the right to effective assistance of counsel is dependent on the right to counsel itself.... There is no constitutional right to counsel during such collateral proceedings thus the claim of ineffective assistance of counsel in this case does not amount to a basis for habeas relief."); *Stewart v. Hanslmaier,* No. 95 CV 0790, 1996 WL 449285 at *3 (E.D.N.Y. July 29, 1996) (Sifton, D.J.); *Lotwich v. Neubert,* No. Civ. 90–4689, 1991 WL 167025 at *6 (D.N.J. Aug.23, 1991) ("In the instant case, the alleged attorney error occurred after petitioner lost his first direct appeal to the Appellate Division. Under the rulings [in] *Ross* and *Finley,* petitioner has no constitutional right to an attorney in discretionary appeals, such as petitions for certification to the New Jersey Supreme Court, or in subsequent proceedings, such as state habeas proceedings. Therefore, petitioner cannot invoke an ineffective assistance of counsel claim as cause for his procedural default."); *Motti v. Coombe,* 84 Civ. 3580, 1986 WL 3791 at *2 (S.D.N.Y. March 27, 1986); *Bullock v. Warden, Auburn Correctional Facility,* 575 F.Supp. 681, 684 (S.D.N.Y.1983).

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Robert P. Patterson, 500 Pearl Street, Room 2550, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Patterson. Failure to

file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL— CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).